JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | EDCV 24-2145 JGB (SHKx) | Date | February 27, 2025 |
|---|---|---|---|
| Title | *Alberto Vasquez v. Impact Fulfillment Services, LLC* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiff's Motion to Remand (Dkt. No. 11); and (2) VACATING the March 3, 2025 Hearing (IN CHAMBERS)

Before the Court is Plaintiff Alberto Vasquez's ("Vasquez" or "Plaintiff") motion to remand pursuant to 28 U.S.C.A. §§ 1447(b)-(c). ("Motion," Dkt. No. 11.) The Court determines this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion. The Court **VACATES** the March 3, 2025 hearing.

## I. BACKGROUND

On February 28, 2024, Plaintiff, individually and on behalf of similarly situated individuals, filed a putative class action complaint in the Superior Court of the County of Riverside against Defendant Impact Fulfillment Services, LLC ("IFS" or "Defendant") and Does 1 through 10. ("Complaint," Dkt. No. 1-2, Ex. A.) On May 9, 2024, Defendant answered the Complaint. ("Answer to Complaint," Dkt. No. 1-2, Ex. E.) On August 13, 2024, Plaintiff filed a first amended complaint. ("FAC," Dkt. No. 1-2, Ex. H.) On September 12, 2024, Defendant answered the FAC. ("Answer to FAC," Dkt. No. 1-2, Ex. I.)

On October 8, 2024, Defendant removed the action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), and 28 U.S.C. §§ 1441, 1446, and 1453. ("NOR," Dkt. No. 1.) In support of its NOR, Defendant filed the declarations of Vice President of IFS' Human Resources Department Angela Mendes ("Mendes Decl.," Dkt. No. 1-1) and attorney Matthew Scholl ("Scholl Decl.," Dkt. No. 1-2).

The FAC alleges nine causes of action under the California Labor Code and California Business and Professions Code: (1) failure to pay minimum and straight time wages, Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197; (2) failure to pay overtime fees, Cal. Lab. Code §§ 1194 and 1198; (3) failure to provide meal periods, Cal. Lab. Code §§ 226.7 and 512; (4) failure to authorize and permit rest periods, Cal. Lab. Code § 226.7; (5) failure to timely pay final wages at termination, Cal. Lab. Code §§ 201-203; (6) failure to provide accurate itemized wage statements, Cal. Lab. Code § 226; (7) failure to indemnify employees for expenditures, Cal. Lab. Code § 2802; (8) unfair business practices, Cal. Bus. & Prof. Code § 17200, et seq.; and (9) civil penalties under the Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2699, et seq. (See FAC.)

On November 7, 2024, Plaintiff filed the Motion. (Motion.) In support of the Motion, Plaintiff filed a declaration of attorney Daniel J. Kramer. ("Kramer Decl.," Dkt. No. 11-1.) On November 18, 2024, Defendant opposed. ("Opposition," Dkt. No. 12.) Plaintiff replied on November 25, 2024. ("Reply," Dkt. No. 13.)

## II.   FACTS

Plaintiff worked as an hourly, non-exempt employee of Defendant from approximately January 2023 through November 2023. (FAC ¶ 14.) Plaintiff brings this action on behalf of himself and all other current and former hourly-paid or non-exempt California employees employed by or formerly employed by Defendant. (Id. ¶¶ 23–27.) The proposed class is defined as follows:

> All persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years and 178 days before the filing of the initial complaint in this action and ending when notice to the Class is sent.

(Id. ¶ 25.)

The FAC alleges that Defendant failed to: pay for all hours worked (including minimum, straight time, and overtime wages); provide legally compliant meal periods; authorize and permit rest periods; timely pay all final wages upon termination; furnish accurate itemized wage statements; and indemnify for work-related expenditures. (Id. ¶¶ 14–22.)

## III.   LEGAL STANDARD

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1195 (9th Cir. 2015). "In determining the amount in controversy, courts first look to the complaint. Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." Id. at 1197

(quotations omitted). "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." Id.

Where a plaintiff makes a factual attack in the context of CAFA jurisdictional requirements, defendants are required to support their jurisdictional allegations with proof typically considered at summary judgment. A factual attack "contests the truth of the . . . allegations" themselves. Id. (citation omitted). "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." Id. (quoting Ibarra, 775 F.3d at 1197). A factual attack "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." Harris, 980 F.3d at 700 (citing Ibarra, 775 F.3 at 1199 (finding that it is sufficient to "contest[ an] assumption" without "assert[ing] an alternative [assumption] grounded in real evidence")).

A defendant is required to file a notice of removal that includes only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 88 (2014). However, if a plaintiff contests these allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id. The preponderance of the evidence standard requires that "the defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount." Sanchez v. Monumental Life. Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (internal quotations omitted). The parties "may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of the removal." Ibarra, 775 F.3d at 1197 (internal quotations and citation omitted). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Id.

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198. "As with other important areas of our law, evidence may be direct or circumstantial. In either event, a damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." Id. at 1199. "Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." Id.

Under certain circumstances, attorneys' fees may also be included in the amount in controversy. "[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, then there is no question that future attorneys' fees are at stake in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in

controversy." Fritsch v. Swift Transp. Co. of Ariz., 899 F.3d 785, 794 (9th Cir. 2018) (internal quotations, brackets, and citation omitted). However, "a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." Id. at 796.

### IV.  DISCUSSION

Plaintiff argues remand is warranted because Defendant untimely removed this action to federal court and failed to prove by a preponderance of the evidence that the amount in controversy for the putative class exceeds the $5,000,000 CAFA jurisdictional minimum. (See Motion.)

**A. Timeliness**

Plaintiff asserts that Defendant's removal was untimely because it was filed outside of the 30-day removal window, as outlined by 28 U.S.C. § 1446 ("Section 1446"). (See Motion at 5.) Specifically, Plaintiff argues that the information Defendant relied upon for purposes of its removal notice—that is, Plaintiff's dates of employment, the putative class members' average pay rates, the approximate number of putative class members, and that there was minimal diversity between the Parties—were readily apparent on the face of the Complaint or otherwise determinable using reasonable steps in ascertaining removability. (See id. at 5-6.) Defendant counters that removal was timely under all relevant Ninth Circuit authority. (See Opposition at 9.) The Court agrees with Defendant.

A "CAFA case may be removed at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered." Roth v. CHA Hollywood Med. Ctr., L.P., 720 F.3d 1121, 1126 (9th Cir. 2013). "Section 1446(b)(1) and (b)(3) specify that a defendant must remove a case within thirty days of receiving from the plaintiff either an initial pleading or some other document, if that pleading or document shows the case is removable." Id. at 1123. That is, Section "1446(b)(1) and (b)(3) place strict limits on a defendant who is put on notice of removability *by a plaintiff*." Id. (emphasis added). However, "a defendant does not have a duty of inquiry if the initial pleading or other document is 'indeterminate' with respect to removability." Id. at 1125. "[E]ven if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove." Id.

Here, removability of the action was not clear from the face of the Complaint or the FAC as neither allege that the estimated number of putative class members is at least 100 nor do they allege that the amount in controversy exceeds $5,000,000. (See Complaint; FAC; Opposition at 8-9.) Further, Plaintiff has not identified any other documentation it gave to Defendant from which Defendant could have determined removability. As such, the thirty-day clock was not triggered.

Moreover, it is immaterial how long Defendant had access to the information upon which the removal request was made—so long as removability was ascertained from Defendant's own

independent investigation separate from an initial pleading or other indeterminate document. See Rea v. Michaels Stores Inc., 742 F.3d 1234, 1238 (9th Cir. 2014) ("In other words, as long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the 30-day period never starts to run and the defendant may remove at any time."); Kuxhausen v. BMW Fin. Servs. NA LLC, 707 F.3d 1136, 1141 (9th Cir. 2013) ("declin[ing] to hold that materials outside the complaint start the thirty-day clock"); Taylor v. United Rd. Servs., Inc., 313 F. Supp. 3d 1161, 1173 (E.D. Cal. 2018) ("That Defendant was in possession of facts that did later permit it to conduct its own investigation and perform calculations that served as the basis for its notice of removal does not mean that it was required to do so or that it was required to do so at any particular time."); Amezcua v. CRST Expedited Inc., 653 F. Supp. 3d 712, 719 (N.D. Cal. 2023) (holding same); Chi-Fu Hsueh v. Bankers Life & Cas. Co., 421 F. Supp. 3d 937, 942 (S.D. Cal. 2019) (holding that defendants "r[an] afoul of the second thirty-day deadline because removability could be ascertained from the class certification order without an investigation" as defendants "needed to consult the prior estimates of damages, and multiply them" after receiving "notice of the increase in class size").  Accordingly, pursuant to Section 1446, removal was proper, and the Motion is **DENIED** on this basis.

**B.  Amount in Controversy**

In its NOR, Defendant asserts that the amount in controversy ("AIC") requirement under CAFA is satisfied because Plaintiff's claims lead to an aggregate AIC of $5,844,390.25. (NOR ¶¶ 14-49.)  Because the FAC does not state the amount of damages sought, Defendant must prove that the AIC exceeds $5 million.  See Ibarra, 775 F.3d at 1197.  "[T]he Court must decide, based upon evidence submitted, whether the amount in controversy requirement has been satisfied by a preponderance of the evidence." Torrez v. Freedom Mortg., Corp., 2017 WL 2713400, at *3 (C.D. Cal. June 22, 2017).  "[A] defendant may establish the amount in controversy by relying on admissible statistical evidence taken from a representative sample and extrapolated to calculate the potential liability for the full class." Duberry v. J. Crew Grp., Inc., 2015 WL 4575018, at *2 (C.D. Cal. July 28, 2015) (citing LaCross v. Knight Transp. Inc., 775 F.3d 1200, 1202–09 (9th Cir. 2015)).  However, a defendant is "not required to comb through the records to identify and calculate the exact frequency of violations." Salcido v. Evolution Fresh, Inc., 2016 WL 79381, at *6 (C.D. Cal. Jan. 6, 2016).  "Defendant has no obligation . . . to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." Ray v. Wells Fargo Bank, N.A., 2011 WL 1790123, at *6 (C.D. Cal. May 9, 2011).  Where "a defendant must prove the amount in controversy by a preponderance of the evidence, a declaration or affidavit may satisfy the burden." Id.

To calculate the AIC for the purposes of the NOR, Defendant relies on the Mendes Declaration.  (See NOR; Mendes Decl.)  Mendes declares that she reviewed employee rosters and payroll records, maintained by IFS in the normal course and scope of business, during the relevant time period to determine the following:

- "... Mr. Vasquez ... was formerly employed by IFS from January 2023 to November 2023 as a forklift operator at IFS's warehouse in Moreno Valley."
- "... IFS employed 299 hourly non-exempt employees in California at various times between September 3, 2019 and February 28, 2024."  "[T]hese employees worked approximately 25,787 workweeks ...[,] received an average hourly straight-time rate of $19.10[, and] ... were paid weekly."
- "... 114 hourly non-exempt employees ... in California ended their employment with IFS between February 28, 2021 and February 28, 2024."
- "... IFS employed 192 hourly non-exempt employees in California at various times between February 28, 2023 and February 28, 2024."  "These employees worked approximately 7,342 workweeks ... and received 7,342 wage statements."

(Mendes Decl. ¶¶ 5-8.)

As such, in the NOR, Defendant alleges the following amounts in controversy totaling $5,844,390.25:

- Meal period violations: $1,231,329.25
- Rest period violations: $1,231,329.25
- Unpaid wages: $692,622.70
- Liquidated damages: $386,805.00[1]
- Waiting time penalties: $522,576.00
- Wage statement violations: $610,850.00
- Unreimbursed business expenses: $0
- PAGA penalties: $0
- Attorneys' fees: $1,168,878.00

(NOR ¶¶ 24-49.)

Plaintiff counters that Defendant has not established the requisite AIC pursuant to CAFA.  At the outset, Plaintiff argues that the Mendes Declaration should be disregarded because it is unreliable.  (See Motion at 7-10.)  Plaintiff further asserts that Defendant did not submit credible, summary judgment-type evidence to prove that the AIC exceeds $5 million.  (See id. at 7, 11-18.)  Specifically, (1) the meal and rest period violation calculations rely on speculative assumptions which render them unreasonable; (2) the calculations for unpaid wages

---

[1] The NOR states that if "all liquidated damages owed thereon are owed only at the lowest minimum wage rate in effect during the putative class period (i.e., $12/hour)," "the amount of unpaid minimum wages in controversy with respect to Plaintiff's minimum wage claim is $386,805.00."  (See NOR ¶ 37.)  However, the NOR also states that "the amount of liquidated damages (excluding damages) in controversy is also $783,885.30."  (See id.)  Because Defendant asserts that the amounts in controversy total $5,844,390.25, the Court assumes that the total amount of liquidated damages is $386,805.00.

are arbitrary, unsupported, and rest on faulty assumptions; (3) the calculation regarding failure to pay wages due at termination is arbitrary and unsupported; (4) the alleged penalties amount for wage statement violations is overstated and rests on faulty premises; and (5) the attorneys' fees amount is unsubstantiated. (See id. at 7-18.) In the alternative, if the Court finds that removal was proper, Plaintiff requests that the Court remand the PAGA claim. (See id. at 18.) The Court addresses these arguments in turn.

### 1. Mendes Declaration

Plaintiff asserts that the Mendes Declaration is not competent evidence because it provides, without any showing of foundational facts or personal knowledge, only approximate numbers of employees employed by Defendant and workweek count. (See id. at 9.) Specifically, Plaintiff argues that the Mendes Declaration does not state that she reviewed corresponding time and pay records, or provide any assessment of the meal period violation rate, rest period violation rate, wage statement violation rate, or any information whatsoever related to actual violation data. (See id.) Additionally, the Mendes Declaration fails to explain how the average hourly rate of pay was calculated. (See id.)

Mendes states that she is the Vice President of Human Resources at IFS and is "familiar with and ha[s] access to personnel documents maintained by IFS in the normal scope of business, including, but not limited to employee personnel files, timekeeping records, and payroll records." (Mendes Decl. ¶ 1.) Mendes further asserts that she "review[ed] [] Mr. Vasquez's personnel records" and "employee rosters and payroll records" during the relevant time period. (Id. at ¶¶ 5-8.) That is sufficient to establish foundation. See Torrez v. Freedom Mortg., Corp., 2017 WL 2713400, at *3 (C.D. Cal. June 22, 2017) (finding that a declaration provided an adequate foundation because the declarant specified his position in the company and stated that he has access to certain employee-related information, which he accesses through his regular course of business activities). Further, the Mendes Declaration does not reveal any "statement, other than one made by the declarant . . ., offered in evidence to prove the truth of the matter asserted." Deleon v. Time Warner Cable LLC, 2010 WL 11515279, at *2 (C.D. Cal. Apr. 12, 2010) (internal citations omitted). The Mendes Declaration relies on Mendes' personal knowledge learned from her position and her review of employee rosters and payroll records. As such, the Mendes Declaration is competent evidence and will not be disregarded as requested by Plaintiff.

### 2. Meal and Rest Period Violations (Claims Three and Four)

Defendant asserts that Plaintiff's meal and rest period violations each place $1,231,329.25 in controversy, respectively. (See NOR ¶¶ 24-31.) To reach this figure, Defendant assumes two-and-a-half meal and two-and-a-half rest period violations every week for all class members.[2] (See

---

[2] Defendant contends that putative class members worked 25,787 workweeks and received an average straight-time rate of $19.10 (25,787 workweeks x 2.5 meal or rest period violations/workweek x $19.10/violation = $1,231,329.25 for each claim). (See NOR ¶¶ 27, 31.)

id.) Defendant explains that its assumptions are conservative and reasonable, "[d]espite the broad language [ in the pleadings]," as it "estimated in its Removal only 50% meal and rest period violation rates, which is two-and-a-half (2½) meal period violations in a typical workweek and two-and-a-half rest period violations (2½) in a typical workweek, given Plaintiff and other employees were scheduled to work five 8-hour shifts per workweek, with each shift qualifying for one or more meal periods and one or more rest periods." (See Opposition at 13.) Moreover, the Complaint and FAC "allege[] that [Plaintiff] was 'typically scheduled to work at least five days in a workweek and at least eight hours in a workday, but that he regularly worked more than eight hours in a workday and more than forty (40) hours in a workweek[,]' [s]o if anything, Plaintiff's allegations suggest that Ms. Mendes' representation regarding employee scheduling was too conservative." (See id. at 12 (citing Complaint ¶ 13; FAC ¶ 14).) Plaintiff counters that IFS cannot rely on its speculative assumptions of two-and-a-half meal and two-and-a-half rest period violations every week without any evidentiary support. (See Motion at 12-14; Reply at 8-10.)

The Court agrees with Plaintiff. IFS' assumptions "lack factual support." Salazar v. Johnson & Johnson Consumer Inc., 2018 WL 4560683, at *3 (C.D. Cal. Sept. 19, 2018). Plaintiff alleges in the FAC that IFS "regularly, *but not always*, required Plaintiff, the Class, and the Aggrieved Employees to work in excess of five consecutive hours a day without providing a 30-minute, uninterrupted, and duty-free meal period for every five hours of work . . . ." (FAC ¶ 17 (emphasis added).) The FAC also alleges that IFS "regularly required Plaintiff, the Class, and the Aggrieved Employees to work in excess of four consecutive hours a day without Defendant[] authorizing and permitting them to take a 10-minute, uninterrupted, duty-free rest period for every four hours of work (or major fraction of four hours) . . . ." (Id. ¶ 18.) From these vague allegations, Defendant assumes that each putative class member was denied two-and-a-half meal and rest periods once a week. (See NOR ¶¶ 24-31; Opposition 12-13.) "It would be just as consistent with the [FAC] to assume a frequency of . . . once-per-quarter" violation based on the FAC's allegations of "sporadic and intermittent practices." Duran v. Allegis Glob. Sols., Inc., 2021 WL 3281073, at *3 (N.D. Cal. Aug. 2, 2021); see also Ibarra, 775 F.3d at 1199 ("As with other important areas of our law, evidence may be direct or circumstantial. In either event, a damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them.").

Notably, IFS' only evidence is the Mendes Declaration which provides an estimate of the total numbers of hourly non-exempt employees that IFS employed, states that employees received weekly wage statements, estimates the average hourly straight-time rate that employees received, estimates the number of workweeks that employees worked in total, and estimates the number of employees that have separated from their employment with IFS. (Mendes Decl. ¶¶ 6-8.) Nothing in the Mendes Declaration "purports to provide evidence that would assist the Court in making a reasonable assumption as to the applicable violation rate." Gonzalez v. H&M Hennes & Mauritz L.P., 2022 WL 179292, at *3 (C.D. Cal. Jan. 20, 2022). Thus, Defendant does "not provide any extrinsic evidence to tip the analysis in its direction, or point to anything in the [FAC] that might do so." Duran, 2021 WL 3281073, at *3.

Accordingly, because "[IFS] does not set forth any facts supporting its assumptions regarding the frequency of meal and rest period violations . . . the Court finds that [IFS] has failed to establish by the preponderance of the evidence the amount in controversy for these claims." Salazar, 2018 WL 4560683, at *3 (finding that defendant presented no facts supporting its violation rate and thus defendant did not establish by a preponderance of the evidence the AIC for plaintiffs' meal and rest break claims); see also Garibay v. Archstone Communities LLC, 539 F. App'x 763, 764 (9th Cir. 2013) (affirming district court's decision that defendant's evidence was insufficient to support removal jurisdiction because defendant failed to provide any evidence regarding why the assumption that each employee missed two rest periods per week was more appropriate than one missed rest period per paycheck or month).

### 3. Plaintiff's Remaining Claims

The Court need not decide the AIC for Plaintiff's remaining claims at issue—unpaid wages, liquidated damages, failure to pay wages due at termination, and wage statement claims—or the amount of attorneys' fees at stake because even if the Court found that IFS met its burden to show by a preponderance of the evidence that its calculations for the remaining claims and attorneys' fees are reasonable, the AIC would total less than $5,000,000, which does not meet CAFA's jurisdictional threshold. As established above, Defendant's estimated meal and rest period calculations are unreasonable. As to the remaining claims at issue, IFS asserts that the unpaid wages claim puts at least $692,622.70 in controversy, liquidated damages put at least $386,805[3] in controversy, waiting time penalties put at least $522,576 in controversy, and wage statement penalties put at least $610,850 in controversy. (NOR ¶¶ 32-42.) IFS further estimates that Plaintiff will recover a 25% fee of $1,168,878. (NOR ¶¶ 47-48.) Thus, the total estimate for the remaining claims and attorneys' fees is $3,381,731.70, well below the jurisdictional threshold. Furthermore, the attorneys' fees estimate would likely be lower since IFS calculated the fees by considering its estimates for Plaintiff's meal and rest period claims, which the Court found to be based on unreasonable assumptions. Accordingly, the Court finds the AIC for Plaintiff's claims is below the threshold amount necessary for federal diversity jurisdiction pursuant to CAFA. Moreover, because the Court remands all of Plaintiff's claims, it need not address Plaintiff's request to remand the PAGA claim.

### V. CONCLUSION

For the reasons above, the Court **GRANTS** the Motion. The March 3, 2025 hearing is **VACATED**. The case is **REMANDED** to the Superior Court of California for the County of Riverside.

**IT IS SO ORDERED.**

---

[3] Even if the Court assumes that the total amount of liquidated damages is $783,885.30, the total estimate for Plaintiff's remaining claims and attorneys' fees still falls well below the jurisdictional threshold.